The B.V.D. LICENSING
CORPORATION,
Plaintiff,

v.

MARO HOSIERY
CORPORATION, Defendant.

No. 88 Civ. 2459 (RWS).

United States District Court,
S.D. New York.

June 23, 1988.

Nims, Howes, Collision & Isner, New York City (Oliver P. Howes, Jr., William R. Hansen, and Joyce M. Russell, of counsel), for plaintiff.

Summit Rovins & Feldesman, New York City (John L. Amabile, and Kathryn J. Fritz, of counsel), for defendant.

## OPINION

SWEET, District Judge.

Defendant Maro Hosiery Corporation ("Maro") has moved for an order pursuant to 9 U.S.C. §§ 3, 4 (1982) compelling plaintiff The B.V.D. Licensing Corporation ("B.V.D.") to proceed to arbitration and staying this action pending a final determination of that arbitration proceeding. Upon the findings and conclusions set forth below, the motion is granted.

*Background*

B.V.D. is a Delaware company that owns trademarks pertaining to underwear and hosiery for men, women and children. Maro is a North Carolina company that sells hosiery goods for retail sale. At issue on this motion is whether the parties should be directed to arbitrate certain disputes that are related to a trademark license agreement dated August 29, 1958 ("Agreement") between the parties pursuant to which Maro has been marketing hosiery bearing B.V.D.'s trademark without interruption since 1957.

By letter dated September 9, 1986, B.V.D. sent Maro a Notice of Default alleging that Maro was in breach of the Agreement in five respects, including unauthorized deductions of "advertising allowances" from gross sales, unauthorized sales to Puerto Rico, failure to submit samples of Maro's tights products for testing, failure to develop and maintain a substantial and permanent business in B.V.D. licensed products, and failure properly to package B.V.D. products. The September 1986 Notice of Default warned Maro that "[u]nless these breaches of the Agreement

are cured within ninety (90) days, we will be free to terminate the Agreement."

Through its attorneys, Maro responded by letter dated October 27, 1986 addressing each of the allegations of breach. With respect to the claim of improper deductions, Maro informed B.V.D. that it "uses the terminology 'advertising allowance' to cover various types of permissible allowances given to customers other than standard returns and allowances for damaged merchandise," but acknowledged that certain actual advertising expenses had been "inadvertently" deducted. Maro offered to provide B.V.D. with "a further analysis of ... such deductions for purposes of establishing its actual dollar effect." With respect to the alleged sales to Puerto Rico, Maro conceded that it had made such sales on which it had paid royalties, but that they would "not continue in the future without your acquiesence." With respect to the allegations concerning the tights products and the packaging, Maro indicated that B.V.D. would be provided with samples of both for its review. Finally, Maro disputed B.V.D.'s contention that it had failed to develop a substantial and permanent business in B.V.D. products, noting that Maro had maintained annual sales in excess of $5 million while the Agreement established a minimum guarantee of only $3 million.

By letter dated October 22, 1987, B.V.D. requested an accounting for Maro's improper advertising deductions which B.V.D. claimed would amount to "several thousand dollars in unpaid royalties." Referring to Maro's letter of October 1986, B.V. D. also stated that it did not agree with Maro's claim that annual sales of $5 million in 1986 constituted compliance with the requirement in paragraph 6 of the Agreement that Maro maintain a substantial and permanent business in B.V.D.'s products. B.V.D. observed that the $3 million minimum sales figure had been established for the year 1962 and that Maro's 1986 sales figures for B.V.D. products did not constitute substantial business "especially when the inflation factor is considered." B.V. D.'s October 1987 letter did not refer to its prior allegation concerning unauthorized sales to Puerto Rico.

By letter dated November 18, 1987, Maro, through its counsel, responded to the issues raised in B.V.D.'s October 1987 letter. Maro reiterated its contention, expressed in its October 1986 letter, that Maro uses the terminology "advertising allowance" to cover non-advertising allowances. Maro also reiterated its belief that it was in compliance with the substantial business requirement of the Agreement.

On March 11, 1988 B.V.D. sent Maro a notice of termination ("Termination Notice") which cited the following alleged breaches on the part of Maro as grounds for the termination:

1. improper sales by Maro of licensed products outside the licensed territory, namely, in Puerto Rico;

2. Maro's failure to provide B.V.D. an accounting of, and compensation for, improper deductions of advertising allowances from gross sales for the period from August 31, 1971 to August 1986;

3. Maro's failure to maintain a substantial and permanent business in B.V.D. licensed products; and

4. Maro's manufacture of goods outside the licensed territory, namely, in Mexico.

The Termination Notice stated that notice of the first three alleged breaches had been given to Maro in the September 1986 letter and that Maro's failure to cure since that date constituted a continuing and material breach of the Agreement.

On March 23, 1988, Maro commenced an arbitration proceeding before the American Arbitration Association ("AAA") relying on paragraph 28 of the Agreement which provides:

28. All controversies arising under or in connection with or relating to any alleged breach of this Agreement shall be settled by arbitration in the City of New York, State of New York, under and in accordance with the rules then obtaining of the American Arbitration Association. In the event that the arbitrator shall resolve the controversy favorable to the Licensor [B.V.D.], the Licensee [Maro] shall have ninety (90) days after notice in writing thereof ... wherein to cure or be

relieved of the breach or default upon its part found by the arbitrator or otherwise to comply with his direction, and, pending the said arbitration and compliance with the finding of the arbitrator, the within Agreement shall remain and shall continue in full force and effect for the duration, under the terms and conditions hereof.

Maro's demand for arbitration seeks a determination that B.V.D.'s attempt to terminate the Agreement was improper.

B.V.D. has refused to proceed with arbitration and, on April 8, 1988, commenced the instant action in which it asserts claims for breach of contract, trademark infringement and unfair competition. Maro answered the complaint and thereafter brought on the instant motion with the filing of an order to show cause. Oral argument on Maro's motion was held on May 20, 1988.

*The Federal Arbitration Act*

Section 3 of the Federal Arbitration Act (the "Act"), 9 U.S.C. § 3, provides:

If any suit or preceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

As this court has recently held, "[o]n a motion to stay a proceeding in favor of arbitration, the court has a limited and well-defined task. It must determine first whether an agreement to arbitrate exists, *see* 9 U.S.C. § 4 (1982); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967), and second, whether the dispute between the parties falls within the scope of the matters they agreed to arbitrate, *see Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d [59,] 63 [ (2d Cir. 1983) ]." *Cook Chocolate Co. v. Salomon, Inc.*, 684 F.Supp. 1177, 1181 (S.D.N.Y. 1988).

Here, there is no dispute that the parties entered into a valid arbitration agreement. B.V.D. contends, however, that the Agreement's arbitration clause is narrowly circumscribed both temporally and substantively. Thus, B.V.D. asserts, paragraph 28 provides for arbitration of only "controversies arising under or in connection with or relating to any alleged breach of" the Agreement, and paragraph 20 requires that upon being notified of an alleged breach, the licensee must seek arbitration concerning the alleged breach within ninety days. Paragraph 20 provides, in pertinent part:

20. Notwithstanding the provisions of paragraph 19 of this Agreement, B.V.D. shall have the right to terminate the License Agreement by written notice upon the happening of any of the following events:

(a) If Licensee should fail to perform its obligations hereunder and such breach shall not be cured within ninety (90) days after written notice thereof from B.V.D.; provided, however, that Licensee shall be entitled to submit any claim of breach to arbitration in accordance with paragraph "28" below.

B.V.D. contends (1) that Maro's challenge to the lawfulness of B.V.D.'s termination of the Agreement falls outside the scope of the arbitration clause in paragraph 28 and (2) that, by failing to seek arbitration within ninety days after first being notified of the alleged breaches in September 1986, Maro waived its right to arbitrate those allegations of breach and, thereafter, B.V.D. was free to terminate the Agreement in accordance with paragraph 20.

It is well settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). On the other hand, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of

the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Finally, arbitration should be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. at 582–83, 80 S.Ct. at 1353.

■ B.V.D.'s Termination Notice cites four breaches of the Agreement as grounds for termination. Contrary to B.V.D.'s assertion, Maro has disputed each of the allegations of breach, and, therefore, there is no basis for B.V.D.'s contention that Maro's demand for arbitration is confined to the issue of B.V.D.'s right to terminate for undisputed breach. B.V.D. cannot rely on Maro's October 1986 letter as an admission of breach, since in that letter, Maro disputed two of the allegations of breach, claimed that two other breaches had been cured and promised that the fifth breach—unauthorized sales to Puerto Rico —would not be repeated in the future. Because the resolution of the issues raised in Maro's demand for arbitration will turn on the validity of B.V.D.'s allegations of breach, Maro's petition raises issues that are substantively within the scope of the arbitration clause.

The ambiguity in this case concerns the construction that should be given to (1) the time limit in paragraph 20(a) on Maro's ability to respond to a notice of breach and intent to terminate and (2) the manner in which Maro may respond. Following the well-settled principle that "an interpretation that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect...." *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985), these issues can be resolved to preserve B.V.D.'s ability to terminate the agreement for breach and, at the same time, give Maro the opportunity to respond initially to a notice of breach without seeking arbitration.

Paragraph 20(a), which contains B.V.D.'s only nonbankruptcy related power to terminate the Agreement, expressly states that upon receiving a notice of default and intent to terminate Maro must cure within ninety days; "provided, however, that [Maro] shall be entitled to submit any claim of breach to arbitration in accordance with paragraph '28' below." Although paragraph 28 does not place any time limits on a party's ability to file a demand for arbitration, a reasonable construction of paragraph 20 would require Maro to make its demand for arbitration within the same ninety day period. Otherwise, Maro could forestall arbitration on the merits indefinitely by continuously disputing allegations of breach.

With respect to the manner in which Maro can respond to a notice of breach and intent to terminate, a reasonable interpretation of paragraphs 20 and 28 would permit Maro to respond to a notice of breach from B.V.D. by promising to cure or by disputing the allegations of breach and offering an explanation of why they are unfounded. If B.V.D. disagrees with Maro's response, B.V.D. has the obligation to reject the proffered explanation of breach within ninety days. If B.V.D. fails to reject Maro's response to the notice of breach within ninety days, Maro is entitled to assume that the matter has been resolved.

However, if B.V.D. rejects Maro's explanation or promise to cure, Maro is required to seek arbitration with respect to the disputed allegations of breach. This interpretation permits Maro to respond initially to an allegation of breach without being compelled either to cure or to arbitrate. At the same time, this interpretation prevents B.V.D. from being unable ever to terminate the Agreement under paragraph 20(a) because of Maro's repeated efforts to dispute allegations of breach without submitting them to arbitration. On the one hand, B.V.D. has the duty to notify Maro that it does not accept its explanation of the alleged breach and intends to terminate in accordance with paragraph 20(a). On the

other, Maro has the duty to seek arbitration once it has been informed that B.V.D. does not accept its explanation or offer to cure and intends to terminate.

Here, Maro was first notified of B.V.D.'s claims of breach in September 1986. Maro responded by disputing two and promising to cure three of the alleged breaches. At that time, B.V.D. did not respond to Maro's offer to cure or its attempt to refute certain of the allegations of breach. One year later, in October 1987, B.V.D. sent Maro a letter which contained a request for an accounting of improper advertising allowances and informed Maro that B.V.D. disagreed with Maro's contention a year earlier that it had complied with the Agreement's substantial business requirement. However, B.V.D.'s intent in sending the October 1987 letter is unclear. The letter does not expressly state that B.V.D. considers Maro to be in breach of the Agreement, and it does not expressly state B.V.D.'s intent to terminate the Agreement under paragraph 20(a) if Maro should fail to respond.

The well-settled preference under federal law for arbitration requires that ambiguities concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Moses H. Cone Memorial Hospital,* 460 U.S. at 24–25, 103 S.Ct. at 941. Here, B.V.D. failed to respond timely to Maro's October 1986 response to B.V.D.'s initial allegations of breach and thus must be deemed to have accepted Maro's response and to have declined to exercise its right to terminate at that time. Moreover, unlike its 1986 letter, B.V.D.'s October 1987 letter does not on its face purport to be a notice of breach and intent to terminate, and, therefore, cannot serve to toll the time limit for Maro's obligation to seek arbitration. When B.V.D. sent out an unambiguous Termination Notice in March 1988, Maro responded with a timely demand for arbitration.

Upon the findings and conclusions set forth above, Maro's motion to stay this action and compel arbitration is granted.

IT IS SO ORDERED.