Hal E. WILSON and Robert
L. Abbott, Jr., Plaintiffs,

v.

SUBWAY SANDWICHES SHOPS,
INC. and Doctors Associates,
Inc., Defendants.

No. 93 Civ. 0100 (RWS).

United States District Court,
S.D. New York.

June 2, 1993.

Rosenberg & Fein, New York City (Richard A. Roth, of counsel), for plaintiffs.

Olshan Grundman Frome & Rosenzweig, New York City (Thomas J. Fleming, of counsel), Wiggin & Dana, New Haven, CT (Edward Wood Dunham, Lisa G. Bakanas, of counsel), for defendants.

## OPINION

SWEET, District Judge.

The Defendants, Subway Sandwich Shops, Inc. ("SSSI") and Doctor's Associates, Inc. ("DAI") (collectively, the "Defendants") have moved for an order to dismiss this action or, in the alternative, to stay this action in favor of arbitration.

The Plaintiffs, Hal E. Wilson ("Wilson") and Robert L. Abbott, Jr. ("Abbott") (collectively, the "Plaintiffs"), have cross-moved for an order imposing sanctions against the Defendants pursuant to Rule 11, Fed.R.Civ.P.

For the reasons set forth below, the Defendants' motion is denied and the Plaintiffs' motion is denied.

### Parties

Wilson is an individual who is a citizen and resident of the State of North Carolina.

Abbott is an individual who is a citizen and resident of the State of New York.

SSSI is a corporation organized and existing under the laws of the State of Connecticut.

DAI is a corporation organized and existing under the laws of the State of Florida. Prior to July 1991, DAI was a corporation organized under the laws of the State of Connecticut ("DAI Connecticut"). On July 1, 1991, DAI of Florida merged with DAI Connecticut, and the former emerged as the surviving corporate entity.

### Facts

This is a diversity action on a money judgment against SSSI rendered in the State of South Carolina. Specifically, it is premised on the following alleged facts: first, a judgment was entered against SSSI and the Plaintiffs on February 18, 1991 in favor of a third party in the State of South Carolina; second, SSSI failed to satisfy the judgment for more than two years; third, as a direct

result of this failure on SSSI's part, post-judgment execution proceedings were commenced against the Plaintiffs; and fourth, as a direct result of those proceedings, the Plaintiffs were caused to sustained damages which they seek to recover in this present action.

DAI is the national franchisor of Subway restaurants. It sells the right to operate a Subway restaurant which grants a franchisee a license to use nationally-known and federally-registered Subway trademarks. SSSI is a real estate leasing company allegedly affiliated with DAI.[1]

On or about July 14, 1986, the Plaintiffs entered into a franchise agreement (the "Agreement") with DAI Connecticut for the purpose of operating a Subway restaurant (the "Restaurant") in South Carolina. On or about November 26, 1986, SSSI and Cypress Square Associates ("Cypress") entered into a contractual agreement (the "Lease") whereby the former as tenant leased certain property (the "Premises") from the latter as landlord, which was located in Florence, South Carolina. Days earlier, on or about November 18, 1986, the Plaintiffs had signed the Lease as personal guarantors of the performance of the obligations undertaken by the tenant of the Lease.

On or about December 16, 1986, the Plaintiffs and SSSI entered into a contractual agreement (the "Sublease") whereby the former sublet the Premises from the latter for the purpose of locating the Restaurant there.

The Plaintiffs operated the Restaurant in Florence, South Carolina, from about November 1986 to about March 1990. The Plaintiffs then decided to move the Restaurant to a new location.

On or about May 15, 1990, Cypress commenced an action against SSSI and Plaintiffs in the Court of Common Pleas, Twelfth Judicial District, State of South Carolina ("Action"), to recover damages allegedly arising from the breach of the Lease. Both the Plaintiffs and SSSI appeared by counsel and fully participated in the Action.

The Plaintiffs and SSSI answered Cypress' Complaint, and SSSI cross-claimed against the Plaintiffs and the Plaintiffs against SSSI, each alleging that if any recovery were obtained by Cypress, the other should provide indemnification with regard thereto. See Cypress Square Assoc. v. Subway Sandwich Shops, Inc., No. 90–CP–21–586, slip op. at 1–2 (S.C.Ct.C.P. Feb. 18, 1991).

After a trial on the merits, the court rendered a decision granting Cypress a judgment against SSSI and the Plaintiffs in the amount of $70,422.00 (the "Judgment"). See id. at 5. With regard to SSSI's cross-claim against the Plaintiffs, the Judgment held that "Subway shall hold harmless Wilson and Abbott from and against any recovery of [Cypress] herein against [Wilson and Abbott]" by Cypress in connection with Cypress' claims. Id. at 6.

While DAI was neither named in the action nor a party to certain mutual releases agreed to by SSSI and the Plaintiffs on or about March 2, 1990 ("Mutual Release"),[2] the Plaintiffs' Complaint seeks relief against DAI on the theory that, as the South Carolina court observed, SSSI and DAI engaged in improper and fraudulent practices:

---

**1.** The actual nature of the relationship between SSSI and DAI is in dispute. The Plaintiffs contend that DAI is either the alter ego of SSSI or they are one and the same. In the South Carolina action discussed in greater detail below, the State Court of Common Pleas concluded that the relationship was at best "unclear," but it did not have to clarify the relationship because DAI was not a party to that action. See Cypress Square Assoc. v. Subway Sandwich Shops, Inc., No. 90–CP–21–586, slip op. at 2 (S.C.Ct.C.P. Feb. 18, 1991).

**2.** In a letter dated March 2, 1992, SSSI offered to Abbott and Wilson that SSSI would "release" them from their obligations under the lease with Cypress if they agreed to abandon the same and any interest therein. The letter contained a "Mutual Release" whose terms were consistent with the cover letter, and which also provided that in return for SSSI's release of the Plaintiffs, they would hold harmless SSSI from and against any claims which might be interposed by the third party to the sublease. See Cypress, No. 90–CP–21–586, slip op. at 3–4. SSSI's offer was accepted by the Plaintiffs and, as was requested of them, they signed acceptances of the offer and returned said acceptances to SSSI. See id. at 4.

to wit, the leasing of property from individual owners by a no-asset corporation, whose sole function is to insulate from liability thereon the entity deriving the exclusive benefit from the operation of restaurants operated on the leased property.... [I]t appears that little, if any, justification exists for any legal determination of separateness between [SSSI] and [DAI].

*Id.* at 7.

The Plaintiffs allege that, despite repeated demands between February 18, 1991 and January 1993, SSSI refused to pay Cypress or satisfy the judgment. Having failed in its collection efforts against SSSI, Cypress entered the Judgment in the State of New York and, contemporaneously therewith, brought a post-judgment execution action against Abbott. On or about December 11, 1992, Cypress served upon Abbott's employer, Bear Stearns & Co., Inc. ("Bear Stearns"), a Restraining Notice to Garnishee With Information Subpoena, thereby restraining all of Abbott's accounts at Bear Sterns.

Abbott is an Associate Director in the Bear Stearns High Yield/Bankruptcy Group. The Plaintiffs allege that in December 1992, as a direct result of SSSI's failure and refusal to satisfy the Judgment, all of Abbott's accounts held by Bear Stearns were frozen. They assert further that this development has cause Abbott considerable professional embarrassment and damage to his business reputation.

The Plaintiffs have subsequently vacated the Restraining Notice served on Abbott, stayed the New York Judgment, and brought this action asserting five grounds upon which relief may be granted. In the First and Second Claims for Relief, Abbott and Wilson, respectively, seek damages for SSSI's violation of the Judgment, subsequently converted into the New York State Judgment, which expressly ordered SSSI to pay Cypress.

The Third and Fourth Claims for Relief seek damages for SSSI's failure to honor and perform according to the terms and conditions of the Mutual Release. Shortly after Cypress commenced the Action against SSSI and the Plaintiffs, SSSI cross-claimed against the Plaintiffs seeking the rent payments

from them in direct contravention of the Mutual Release. In light of this cross-claim, the South Carolina court held that the Mutual Release was binding, *see Cypress,* No. 90–CP–21–586, slip op. at 4, and the Plaintiffs now assert the Third and Fourth Claims for Relief in this action to recover damages for SSSI's breach.

In the Fifth Claim for Relief, the Plaintiffs seek damages for SSSI's alleged intentional and malicious acts which, they contend, have resulted in the injury to their credit reputation and credit standing in excess of $1,000,000.

The Plaintiffs name DAI as a defendant in this action on the theory that, as the alter ego of SSSI, it is liable for any obligations SSSI has toward them.

The Defendants bring their present motion on the ground that the relationship between the Plaintiffs and DAI is governed by the arbitration clause set forth in the Agreement. In light of this clause, the Defendants contend that this action must be stayed in favor of arbitration or dismissed altogether.

The Defendants filed their motion on February 8, 1993. The Plaintiffs requested the imposition of sanctions against the Defendants in a letter received by the Court on February 9, 1993, which was treated as a motion. Oral argument was heard on both motions on March 5, 1993, and the motions are considered submitted as of that date.

### *Discussion*

#### I. *The Defendants Are Not Entitled To Dismissal Or A Stay*

##### A. *The Legal Standards to Compel Arbitration*

A valid arbitration agreement is governed by the Federal Arbitration Act., 9 U.S.C. § 1 *et seq.,* which establishes a "federal policy favoring arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). This policy requires that courts "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985); *see also Shear-*

son/American Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 830 (2d Cir.1988); Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985).

■ As this Court has noted, when considering a motion to stay litigation in favor of arbitration, a court must first determine whether an agreement to arbitrate exists and then decide whether the dispute before it arises under the agreement and is arbitrable. See Cook Chocolate Co. v. Salomon, Inc., 684 F.Supp. 1177, 1181 (S.D.N.Y.1988); see also Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 64 (2d Cir.1983); B.V.D. Licensing Corp. v. Maro Hosiery Corp., 688 F.Supp. 961, 963 (S.D.N.Y.1988). Moreover, in making such determinations, a court is to employ ordinary contract principles, see Conway v. Icahn & Co., 787 F.Supp. 340, 344 (S.D.N.Y. 1990); Kyung Sup Ahn v. Rooney, Pace Inc., 624 F.Supp. 368, 369 (S.D.N.Y.1985), and "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability," Mitsubishi Motors, 473 U.S. at 626, 105 S.Ct. at 3354.

■ Despite the preference Congress and the courts have given to arbitration, it is, nonetheless, critical that the parties have explicitly agreed to arbitrate their disputes before such arbitration is compelled by a court. When it is clearly not the intention of the parties to place a given matter within the ambit of the arbitration agreement, a court may not force arbitration upon them. See Chevron U.S.A. Inc. v. Consolidated Edison Co., 872 F.2d 534, 537 (2d Cir.1989); Gestetner Holdings, PLC v. Nashua Corp., 784 F.Supp. 78, 80 (S.D.N.Y.1992).

■ In attempting to determine the scope of arbitration clauses, courts have distinguished clauses that are "broad" in nature from those that are "narrow." See McDonnell Douglas, 858 F.2d at 832. The former purport to refer all disputes arising out of a contract to arbitration, while the latter confine arbitration to specific kinds of disputes.

See id. at 938; Stena Line (U.K.) Ltd. v. Sea Containers Ltd., 758 F.Supp. 934, 938 (S.D.N.Y.1991).

## B. The Plaintiffs' Claims Do Not Arise Under The Arbitration Clause Of The Agreement

■ The first task of determining whether an agreement to arbitrate exists between the parties is easily accomplished by looking to the Agreement between the Plaintiffs and DAI Connecticut. The arbitration clause set forth in the Agreement states that:

> Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held in Bridgeport, Connecticut and judgment upon an award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. The commencement of arbitration proceedings by an aggrieved party to settle disputes arising out of or relating to this contract is a condition precedent to the commencement of legal action by either party. The cost of such a proceeding will be borne equally by the parties.

Agreement ¶ 10(d).

The question presented by the Defendants' motion is whether the claims raised in the Plaintiffs' Complaint arise under this arbitration clause. While the arbitration clause in question is clearly broad in nature, see McDonnell Douglas, 858 F.2d at 832, its scope is not so broad as to cover the claims of this action.

The Plaintiffs bring the present action in response to SSSI's failure to satisfy the Judgment entered in favor of Cypress. They do not seek money damages under the Agreement, nor do they seek to have the Agreement rendered void or any other equitable relief in connection therewith, nor do they allege fraud against any party "in connection with" the Agreement. Thus, to determine the merits of the claims asserted by the Plaintiffs against SSSI and DAI in this action and to evaluate the contractual relationships existing between them that are relevant to the Judgment, one must look to the

Lease, Sublease, and Mutual Release, not the Agreement.

The Agreement does not mention SSSI, nor does it address the role that either SSSI or DAI Connecticut would play in securing the Premises for the Restaurant. In fact, the Agreement limits the scope of the obligations undertaken by DAI Connecticut to the following:

> a. provide a training program for the operation of sandwich shops using the Company's [DAI Connecticut] recipes, formulas, food preparation procedures, business methods, business forms and business policies. The Franchisee [Wilson, Abbott, and Bruce A. Gills[3]] shall pay all transportation lodging and other expenses incurred in attending the program. The Franchisee must attend the training program before opening his store.
>
> b. provide a Company Representative that the Franchisee may call upon for consultation concerning the operation of his business.
>
> c. provide the Franchisee with a program of assistance which shall include periodic consultations with a Company Representative, publish a periodical advising of new developments and techniques in the Company's sandwich business, and grant access to home office personnel for consultations concerning the operation of his business.

Agreement ¶ 4.

The claims set forth in the Plaintiffs' Complaint cannot reasonably be said to arise out of or relate to the Agreement and do not trigger the Agreement's arbitration clause.

■ The claims alleged here are, at most, related to "collateral" agreements between the Plaintiffs and SSSI. "A 'collateral' agreement is a separate, side agreement, connected with the principal contract which contains the arbitration clause." *Prudential Lines,* 704 F.2d at 64. The Second Circuit has repeatedly noted that when a party resisting the enforcement of an arbitration clause demonstrates that the disputed issue is collateral in nature, "arbitration of that dispute cannot be compelled merely based

upon the existence of an arbitration clause in the main agreement." *Id.; accord Rochdale Village, Inc. v. Public Serv. Employees Union, Local No. 80,* 605 F.2d 1290, 1296–97 (2d Cir.1979). The Lease, Sublease, and Mutual Release are collateral agreement, and as such the arbitration clause of the Agreement does not apply to them. Thus, the Defendants' motion to stay this action or dismiss it in favor of arbitration must be denied.

## II. The Defendants' Conduct Does Not Warrant Imposing Sanctions Against Them

### A. The Legal Standards Of Rule 11

The familiar prescriptions of Rule 11 require a federal court to impose sanctions against an attorney or party who signs a pleading, motion, or other paper, in violation of the requirement that the signer certifies:

> to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P., Rule 11.

> In the event that this Rule is violated:
>
> the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

*Id.*

■ The Second Circuit has defined the standard to be applied in determining whether sanctions should be imposed for a violation of Rule 11:

> Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the

---

3. Gills is not a party to this action.

viability of a pleading before it is signed. Simply put, subjective good faith no longer provides the safe harbor it once did.... [A] showing of subjective bad faith is no longer required to trigger the sanctions imposed by the rule. Rather, sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.... *[W]here it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.*

*Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985) ("*Eastway I*") (footnote omitted, emphasis added). Therefore, in applying Rule 11, courts must assess whether an attorney's conduct was objectively reasonable at the time he or she signed the pleading, motion, or other paper. *See International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir.), *cert. denied sub nom. Golub v. Hydra Offshore, Inc.*, 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); *Oliveri v. Thompson*, 803 F.2d 1265, 1274–75 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Quadrozzi v. City of New York*, 127 F.R.D. 63, 79 (S.D.N.Y.1989).

The substantive requirement imposed on an attorney or party by Rule 11 is that "[p]leadings, motions, and other papers must be justifiable *at the time they are signed*." *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1344 (2d Cir.1991) (emphasis added). It follows, then, that a court must neither "allow hindsight to skew judgment" nor "countenance belated rationalizations concocted to conceal chicanery." *Id.*

### B. *Applying The Standards*

█ A review of the record on this motion demonstrates that the Defendants did not violate the standards of Rule 11. On the one hand, the record supports the conclusion that the conduct of the Defendants' attorneys was objectively reasonable at the time the motion and pleadings were signed. *See International Shipping*, 875 F.2d at 391. On the other hand, the contentions upon which the Defendants' motion are grounded are far from being so defective that it was patently clear at the time the motion and papers were signed that they had "absolutely no chance of success under the existing precedents" or that "no reasonable argument [could have been] advanced to extend, modify or reverse the law as it stands" to support those contentions. *Eastway I*, 762 F.2d at 254.

The Defendants offer arguments regarding the scope of the Agreement's arbitration clause that, although rejected by the Court, are sufficiently cogent and reasonable to withstand the Plaintiffs' Rule 11 assault. Therefore, sanctions are inappropriate.

### Conclusion

For the reasons set forth above, the Defendants' motion to dismiss this action or, in the alternative, to stay this action in favor of arbitration is denied, and the Plaintiffs' cross-motion for the imposition of Rule 11 sanctions against the Defendants is denied.

The Plaintiffs have requested that this action be referred to a U.S. Magistrate Judge for further proceedings. A Magistrate Judge has been assigned, and if both parties consent to a trial before the Magistrate Judge, that trial may proceed forthwith.

It is so ordered.