**The DAIEI, INC. and U.S. Shoes Japan Limited, Plaintiffs,**

**v.**

**The UNITED STATES SHOE CORPORATION and International Court of Arbitration of the International Chamber of Commerce, Defendants.**

**Civ. No. 90-00685.**

United States District Court, D. Hawaii.

Jan. 8, 1991.

[redacted]

[redacted]

James E. Duffy, Fujiyama, Duffy & Fujiyama, Honolulu, Hawaii, for plaintiffs.

John R. Myrdal, Case & Lynch, Honolulu, Hawaii, for defendants.

## ORDER GRANTING DEFENDANT U.S. SHOE'S MOTION TO DISMISS

DAVID A. EZRA, District Judge.

The motion of defendant United States Shoe Corporation ("U.S. Shoe") to dismiss or, in the alternative, for summary judg-

---

**1.** This technical assistance consisted of guidance in the areas of marketing, distribution, and design development. *See* License Agreement at

ment, came on for hearing before this court on January 7, 1991. John R. Myrdal, Esq. appeared on behalf of defendant U.S. Shoe. James E. Duffy, Esq. appeared for plaintiffs The Daiei, Inc. ("Daiei") and U.S. Shoes Japan Limited ("U.S. SJL"). Defendant International Court of Arbitration of the International Chamber of Commerce ("ICA") did not appear.

The court having reviewed the motion and the memoranda filed in support thereof and in opposition thereto, having heard oral argument of counsel, and being fully advised as to the premises herein, GRANTS U.S. Shoe's motion to dismiss.

## BACKGROUND

This action for declaratory and injunctive relief arises out of the alleged breach of a license agreement between Daiei and U.S. Shoe. On July 9, 1974, they entered into a fifteen-year license agreement that authorized Daiei to use certain trademarks owned by U.S. Shoe and obligated U.S. Shoe to provide Daiei with "technical assistance." [1] The license agreement also required Daiei to make yearly cash payments in return for its use of the trademarks and to set up a "new company" for the purpose of manufacturing and marketing footwear. U.S. SJL is the new company Daiei created for that purpose. By the terms of the license agreement, U.S. SJL succeeded upon its inception to all Daiei's rights, interests, obligations, and duties under that agreement. *See* License Agreement at p. 2 (Exhibit "A" to Defendant's Memorandum in Support).

In January 1988, after having operated under the fifteen-year license agreement for more than thirteen years, Daiei and U.S. SJL (hereinafter "plaintiffs") notified U.S. Shoe of their desire to terminate the license agreement. *See* Letter from U.S. SJL, dated January 30, 1988 (attached as Exhibit "B" to Defendant's Memorandum in Support). As grounds for the termination, plaintiffs asserted that U.S. Shoe's withdrawal from the men's footwear mar-

¶ VII (Exhibit "A" to Defendant's Memorandum in Support).

ket and alleged shift of operations from footwear to apparel and eyewear constituted a breach of the agreement. They also charged that U.S. Shoe failed to provide them with technical assistance sufficient to satisfy its obligation under the license agreement. *Id.; see also* Complaint at ¶ 11 (alleging a failure to provide technical assistance for the years 1986–1988).

In their letter of January 30, 1988, plaintiffs also proposed terms for a "termination by mutual agreement." U.S. Shoe rejected these terms, but offered to terminate the agreement in exchange for payment of $25,000. *See* Letter from Howard Platt to Junichiro Kaji, dated March 21, 1988 (attached as Exhibit "B" to Defendant's Memorandum in Support). After further correspondence and attempts at negotiation, the parties were unable to agree on settlement terms. Thereafter, U.S. SJL failed to make its annual royalty payment.

On September 11, 1989, U.S. Shoe filed a request for arbitration with the ICA. The initial request, which named only Daiei as a defendant, was subsequently amended to name U.S. SJL as well. Plaintiffs moved to dismiss the arbitration request, and the ICA denied that motion and ruled that arbitration would proceed before a sole arbitrator. *See* Letter dated March 12, 1990 (attached as Exhibit "G" to Defendant's Memorandum in Support). Subsequently, the ICA appointed Carl Salans ("Salans"), an American practicing in Paris, France, as the sole arbitrator, and it confirmed London as the site of the arbitration. *See* Exhibits "J" and "K" to Defendant's Memorandum in Support.

ICA and U.S. Shoe maintain that all these actions were taken in strict conformity with section XVII of the license agreement. That section provides in part:

> *All disputes or differences* pertaining to or arising out of this License Agreement, or the breach thereof, *shall be settled by arbitration to be held in the City of London,* United Kingdom *in ac-*

*cordance with the rules of the International Chamber of Commerce.* The decision rendered by the arbitrators in such arbitration shall be final, binding upon the parties, and enforceable by any court of competent jurisdiction.

Exhibit "A" to Defendant's Memorandum in Support (emphasis added).

Dissatisfied with the ICA's choice of Salans as an arbitrator and with the process by which the ICA selected him, *see* Complaint at ¶¶ 36–42, plaintiffs sued in this court for declaratory and injunctive relief on September 25, 1990. In their complaint, they ask this court to decide (1) whether the dispute over the ICA's choice of Salans as arbitrator is arbitrable and (2) whether U.S. Shoe's request for arbitration states a claim upon which relief can be granted. At oral argument, they also sought a ruling that Daiei is not a proper party to the arbitration.

U.S. Shoe now moves to dismiss the complaint, arguing the license agreement's arbitration provision precludes plaintiffs from seeking recourse in this court. Plaintiffs do not dispute the validity of the arbitration agreement; rather, they debate the scope of its applicability. *See* Plaintiffs' Memorandum in Opposition at 10–11. They say the issues raised in their complaint are matters for this court, not for the arbitrator. *Id.* at 3. This court has diversity jurisdiction under 28 U.S.C. § 1332(a)(2).[2]

## DISCUSSION

### I. *Standard for Rule 12(b)(6) Dismissal*

U.S. Shoe has moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. In determining whether plaintiffs have stated claims upon which this court can grant relief, the court accepts the complaint's allegations as true and construes it in the light most favorable to plaintiffs. *Baker v. McNeil Island Corrections Ctr.,* 859 F.2d 124, 127 (9th Cir.1988). The court

**2.** Plaintiffs are corporations organized and existing under the laws of Japan; defendant U.S. Shoe is a corporation organized and existing under the laws of the State of Ohio; and defen-

dant ICA is part of an association organized under the laws of France and doing business in the State of New York. The amount in controversy exceeds $50,000.

cannot dismiss the complaint pursuant to Rule 12(b)(6) unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Sun Savings & Loan Association v. Dierdorff,* 825 F.2d 187, 191 (9th Cir.1987) (citation omitted).

## II. *Whether the Parties Agreed to Delegate Determinations of Arbitrability to the Arbitrator*

In their complaint, plaintiffs ask the court to decide whether the dispute over the ICA's choice of Salans as arbitrator is itself arbitrable under the terms of section XVII of the license agreement. They also assert that this court, and not the arbitrator, should decide whether U.S. Shoe's request for arbitration states claims upon which relief can be granted. The issue dispositive of the instant motion to dismiss is whether the parties agreed to submit questions of arbitrability to the arbitrator.

U.S. Shoe maintains that the terms of section XVII of the license agreement assign determinations of arbitrability to the arbitrator. Section XVII provides that all disputes arising out of a breach of the license agreement "shall be settled by arbitration ... in accordance with the rules of the International Chamber of Commerce." Exhibit "A" to Defendant's Memorandum in Support. U.S. Shoe further contends that the rules referenced in section XVII are the ICC Rules of Conciliation and Arbitration ("ICC Rules"). The 1955 edition of the ICC Rules applies to the license agreement, which the parties executed in 1974. *See* Defendant's Supplemental Exhibit "M".

U.S. Shoe emphasizes particularly: (1) Article 7, which sets forth the procedure for nominating and objecting to a chosen arbitrator;[3] (2) Article 13.1, which provides that where the parties have agreed to sub-

mit to arbitration by the International Chamber of Commerce, they shall be deemed to have submitted to the ICC Rules; (3) Article 13.3, which states that any decision as to the arbitrator's jurisdiction shall lie with the arbitrator himself; and (4) Article 13.4, which grants the arbitrator continuing jurisdiction to adjudicate the parties' rights, even if the contract is then null and void.

Plaintiffs conceded at oral argument that the 1955 ICC Rules attached as Supplemental Exhibit "M" to Defendant's Memorandum in Support are the rules incorporated by reference in section XVII of the license agreement. Thus, the only question remaining is whether they agreed, by incorporating those ICC Rules, to submit issues of arbitrability to the arbitrator.

▪ The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("the FAA"), applies to contracts evidencing a transaction involving commerce. *See* 9 U.S.C. § 2. It has been held applicable to trademark license agreements between corporations, *see B.V.D. Licensing Corp. v. Maro Hosiery Corp.,* 688 F.Supp. 961 (S.D.N.Y.1988), and to contracts of sale between Japanese and American companies, *see Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840 (2nd Cir.1987). Thus, the FAA applies to the instant dispute.

Section 2 of the FAA states that a written agreement to submit to arbitration controversies arising out of a commercial contract "shall be valid, irrevocable, and enforceable...." Section 3 provides in addition that when a party files an action based on an issue "referable to arbitration," the court in which the action is filed may stay further proceedings pending arbitration.

▪ In making it the responsibility of the courts to decide which issues are "referable to arbitration," section 3 of the

---

**3.** Article 7.2 provides:

    If the parties fail to agree on the number of arbitrators, the [International Court of Arbitration] shall appoint a sole arbitrator, unless one of the parties requests that the case be submitted to three arbitrators and the dispute appears to the Court important enough to warrant the appointment of three arbitrators.

Article 7.4 states further:

    Should an arbitrator be challenged by one of the parties, the decision of the Court of Arbitration, which shall be the sole judge of the grounds of challenge, shall be final.

FAA simply restates the general rule that courts, not arbitrators, determine whether a particular dispute is arbitrable. *See Sheet Metal Workers, Local 162 v. Jason Mfg.*, 900 F.2d 1392, 1396 (9th Cir.1990) (citations omitted). This general rule applies to disputes governed by the FAA. *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472 (1st Cir.1989). However, it does not apply where the parties have specifically contracted to submit issues of arbitrability to the arbitrator. *Id.*

 The parties' must demonstrate clearly their intent to vest the arbitrator with the power to decide arbitrability. *Local 369, Utility Workers v. Boston Edison Co.*, 588 F.Supp. 800, 804 (D.Mass.1984), *aff'd*, 752 F.2d 1 (1984) (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7, 4 L.Ed.2d 1409 (1960)). The First Circuit held recently that when parties contract to have all disputes resolved according to the Rules of the ICC, which the parties here have done, they agree to let the arbitrator decide questions of arbitrability. *See Apollo*, 886 F.2d at 473.

Here, the text of the license agreement between plaintiffs and U.S. Shoe does not specifically assign the determination of arbitrability to the arbitrator. However, as noted above, Article 13.3 of the ICC Rules, which the parties incorporated by reference in section XVII of the license agreement, does provide that "any decision as to the arbitrator's jurisdiction shall lie with the arbitrator himself." Because the parties here bargained for the arbitrator's determination of arbitrability, plaintiffs' demand that this court determine arbitrability fails as a matter of law to state a claim upon which relief can be granted.

### III. *Whether Daiei is a Proper Party to the Arbitration*

Daiei says it is not a proper party to the ICA arbitration proceeding because all of its obligations under the license agreement passed to U.S. SJL. *See* License Agreement at p. 2 (Exhibit "A" to Defendant's Memorandum in Support). It asks the court for a ruling that arbitration should proceed only against U.S. SJL.

This court's role is limited to determining whether the parties to an arbitration agreement have submitted the subject matter of a particular dispute to arbitration.[4] *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964). Any attendant procedural issues, including procedural defenses, are for the arbitrator's consideration. *Local Union No. 370, International Union of Operating Engineers v. Morrison–Knudsen Co., Inc.*, 786 F.2d 1356, 1358 (9th Cir.1986). Whether an entity is a proper party to the arbitration is a procedural question. *Bakery, Laundry, Allied Sales Drivers & Warehousemen, Local No. 289 v. Metz Baking Co.*, 641 F.Supp. 790, 794–95 (D.Minn.1986). It affects how the arbitration should be conducted, but it does not determine whether the dispute itself is arbitrable. *Id.*

Daiei's claim that it is not a proper party to the arbitration constitutes a procedural defense to U.S. Shoe's request for arbitration. As such, ·it is a matter for the arbitrator to decide. Daiei's request that it be dismissed as a party to the arbitration fails to state a claim upon which this court can grant relief.

### CONCLUSION

Therefore, the court GRANTS U.S. Shoe's motion to dismiss under Fed.R. Civ.P. 12(b)(6) for plaintiffs' failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.

---

**4.** Here, the court has not performed even the limited function of determining arbitrability, since the parties have chosen to submit that issue to the arbitrator.