Howard A. and Judith GRAD, Appellants,

v.

WETHERHOLT GALLERIES, Appellee.

No. 93–CV–1407.

District of Columbia Court of Appeals.

Submitted March 14, 1995.

Decided June 26, 1995.

Jay M. Eisenberg, with whom Ronald D. Jacobs, Rockville, MD, was on the brief, for appellants.

Karen M. Lockwood, Washington, DC, was on the brief for appellee.

Before SCHWELB and RUIZ, Associate Judges, and BELSON, Senior Judge.

RUIZ, Associate Judge:

Appellants, Howard and Judith Grad, asked the Superior Court to vacate an arbitration award rendered against them and in favor of appellee, Wetherholt Galleries ("Wetherholt"), on the ground that they were not parties to any arbitration agreement with Wetherholt. The Superior Court denied the application and confirmed the award, holding that the arbitrator had the authority to determine who was a party to the agreement and that, in any event, the Grads had by their failure to object agreed to submit the question to arbitration. Because the trial court erred in deferring to the arbitrator's decision regarding the Grads' consent to arbitration and in finding that the Grads had participated in the arbitration proceeding without objecting, we reverse and remand for further proceedings.

## I.

Although the record in this case is incomplete, it appears that the facts material to our consideration of the case are undisputed. A corporation called Gallery Marketing, of which one or both of the Grads were either owners or officers, contracted with Wetherholt to render certain services, the nature of which is unimportant for present purposes. The contract contained a clause requiring that "any dispute between the parties shall

be submitted to binding arbitration under American Arbitration Association auspices." [1]

A dispute arose between Gallery Marketing and Wetherholt, resulting in cross-claims being filed with the American Arbitration Association. During the course of the proceedings, Wetherholt amended its claims to assert them against the Grads as well. Wetherholt's theory was that Gallery Marketing was merely the Grads' alter-ego. The arbitrator rendered a substantial award in favor of Wetherholt against Gallery Marketing and the Grads jointly and severally.

After an unsuccessful effort to have the arbitrator modify her award, the Grads and Gallery Marketing filed an application in the Superior Court to have the award modified or vacated. They contended that the arbitrator had exceeded her authority in rendering an award against the Grads. Wetherholt filed a cross-application seeking to have the award confirmed. The trial court held a hearing on the pending cross-applications. At the close of the hearing, the trial court ruled that it would confirm the award as to all parties. The Grads then noted this timely appeal.[2]

## II.

■ We review the trial court's decision in this case *de novo*. Superior Court Civil Rule 70–I provides that proceedings on applications to confirm arbitration awards shall be conducted summarily.[3] Proceeding summarily means, first, determining whether material facts are disputed and then, if necessary, conducting an expedited trial. *Haynes*

*v. Kuder*, 591 A.2d 1286, 1290 (D.C.1991). The Grads did request a hearing. However, no testimony and only one undisputed document was presented at the hearing granted by the trial court.[4] Because the trial court was not called on to resolve any disputed facts, the question presented to this court is one of law. *See Carter v. Cathedral Ave. Coop.*, 566 A.2d 716, 717 n. 6 (D.C.1989) (treating arbitrability issue as question of law where parties did); *see also Poire v. Kaplan*, 491 A.2d 529, 533 (D.C.1985) ("The question of whether an issue is arbitrable is one of law, and a court must make its own determination on the issue.").

## III.

■ Wetherholt essentially contends that the trial court, and hence this court, are precluded from reviewing the arbitrator's decision that Wetherholt's claims against the Grads were subject to arbitration. It advances two theories, both adopted by the trial court: First, by participating in the arbitration proceeding, the Grads irrevocably submitted to the authority of the arbitrator. Second, the arbitrator had exclusive authority to decide who was a party to the agreement containing the arbitration clause. We disagree on both points.

### A.

■ The District of Columbia Uniform Arbitration Act (DCUAA) specifically contemplates a determination by a court whether an arbitration agreement requires a person to submit to arbitration. D.C.Code §§ 16–

1. The actual agreement has not made its way to this court, although it appears to have been submitted to the trial court as an exhibit to a document designated as part of the record. Thus, we must look to the parties' briefs. Interestingly, Wetherholt's brief omits the opening phrase of the arbitration clause, but the Grads' brief purports to quote it: "The GALLERY [Wetherholt] and MARKETING agree that...."

2. Gallery Marketing is not a party to this appeal. Hence, the award is final as to it.

3. Although the first application leading to the confirmation of the arbitration award was the Grads' motion to vacate the arbitral award, followed by Wetherholt's application to confirm the

award, Rule 70–I should still be applied. The rule expressly contemplates defenses to a motion to confirm, and requires that they be stated with specificity. Whether the rule is applied does not depend on who wins the race to the courthouse. Summary proceedings are also used to order and stay arbitration. D.C.Code §§ 16–4302(a) and (b).

4. A copy of a memorandum to the arbitrator filed by Gallery Marketing on the alter-ego issue was submitted to the trial court at the hearing on the parties' cross-applications, and is attached to Wetherholt's brief on appeal. The Grads have not objected to such a supplementation of the record and, under the circumstances, we have allowed it.

4302,[5] 16–4311(a)(5) (1989). Moreover, the DCUAA contemplates such proceedings *either* before or after the award is made. *See Koch v. Waller & Co.*, 439 So.2d 1041, 1043 (Fla.Dist.Ct.App.1983) (applying the Florida version of the Uniform Arbitration Act). Under the DCUAA, the court may vacate an arbitral award where "[t]here was no arbitration agreement and the issue was not adversely determined in proceedings under § 16–4312 and the party did not participate in the arbitration hearing without raising the objection." D.C.Code § 16–4311(a)(5).[6] To require the objecting party to refuse to participate in the arbitration proceeding as a prerequisite to attacking the resulting award would render part of section 16–4311(a)(5) a nullity. That section only requires that the party seeking to vacate an award because there was no agreement between the parties to arbitrate have "rais[ed] the objection" during the proceeding. Thus, a party that participates in an arbitration over its objection is not barred from raising that objection after the award. *See Hot Springs County Sch. Dist. v. Strube Constr.*, 715 P.2d 540, 546 (Wyo.1986) (applying the Wyoming version of the Uniform Arbitration Act).

■ The record shows that the Grads did raise the objection to arbitration during the proceedings. The brief filed with the arbitrator by Howard Grad as president of Gallery Marketing vigorously and repeatedly asserts that the Grads are not parties to the arbitration agreement in the contract between Gallery Marketing and Wetherholt:

> The parties to this Agreement are Wetherholt Galleries, Inc. and Gallery Marketing, Inc. The parties clearly *were not* Howard Grad, Judith Grad, Roger Wetherholt, or Sonia Bernhardt. In fact, and fundamentally, if the agreement had been contemplated to be between the parties individually, the contract never would have been executed. Both parties discussed (and in fact requested) each other to enter into these obligations personally, with full knowledge and understanding that they were limiting their liability as corporate partners, and both principals declined to enter into an agreement with personal guarantees or signatures.

Finally, arbitration is an act that takes place consensually between the parties. It is inappropriate and impossible to *require* entities or individuals who are not parties to an agreement to arbitrate, who have not in fact consented to arbitration, to participate under duress to arbitration. Arbitration is a mutual act between the parties to an agreement who have decided mutually to submit any dispute jointly to the resolution of a third party. The individuals and entities, including Howard Grad, Judy Grad, and the Michael Stone Collection, Inc., are certainly not parties to this Agreement and have not submitted themselves by reason of their consent to arbitration of a matter to which they are not a

---

**5.** Section 16–4302 provides, in pertinent part, (a) On application of a party showing an agreement [to arbitrate], and the opposing party's refusal to arbitrate, the Court shall order the parties to proceed with arbitration, but if [the] opposing party denies the existence of the agreement to arbitrate the Court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.
(b) On application, the Court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the Court shall order the parties to proceed to arbitration.

**6.** We note that the reference in § 16–4311(a)(5) to § 16–4312 (concerning modification or cor-

rection of awards) is probably intended to be a reference to § 16–4302 (concerning motions to compel or stay arbitration). In the Uniform Arbitration Act, on which the DCUAA is modeled, § 12(a)(5), which corresponds to § 16–4311(a)(5) (setting out the grounds upon which a court may vacate an arbitral award), refers to § 2, which corresponds to § 16–4302 (concerning motions to compel or stay arbitration). Uniform Arbitration Act §§ 2, 12 (1955), *reprinted in* 7 Uniform Laws Annotated 1, 140. This makes sense because it merely would be a codification of the doctrine of law of the case, which applies in any event. *See Hercules & Co. v. Shama Restaurant*, 613 A.2d 916, 921 (D.C.1992) (holding that under doctrine of law of the case, raising a claim of fraudulent inducement of arbitration agreement during a post-award challenge would have been futile where the same claim had been denied in the course of a pre-award request for stay).

party. Arbitration under duress, by definition, is not arbitration.

■ We conclude that the foregoing is sufficient to raise an objection to arbitrability. That the *pro se* memorandum also attempts to argue the merits of Wetherholt's alter-ego theory does not vitiate the objection raised in the memorandum. The Grads' continued participation in the arbitration after this question was determined adversely to them does not constitute a waiver of the objection. *See* D.C.Code § 16–4311(a)(5); *cf. Hercules & Co. v. Shama Restaurant,* 613 A.2d 916, 920–21 (D.C.1992) (holding that question of arbitrability was properly before the court notwithstanding the fact that application to vacate award was filed after ninety-day period, where applicant had previously requested and been denied a stay on the same grounds prior to arbitration). To hold otherwise would not only contradict the terms of the statute, but would also either require judicial proceedings regarding arbitrability that may be mooted by an award favorable to the objecting party, or else require the objecting party to risk an adverse adjudication after absenting herself from the proceedings in

order to preserve her objection to arbitrability.[7] *See Hot Springs County Sch. Dist., supra,* 715 P.2d at 546. We decline to place such a gloss on the statute.[8]

## B.

■ The objection having been properly raised and preserved, the Grads had a right under the DCUAA to a judicial determination of the arbitrability of Wetherholt's claim against them. The trial court in the present case did not make an independent determination of arbitrability. Instead it held that the ruling of the arbitrator was conclusive on the matter. Because we must remand for a judicial determination, we address whether the arbitrator's decision regarding arbitrability of the claim against the Grads is entitled to any judicial deference.

■ The arbitrator did, of course, have authority to decide initially whether the Grads could be made parties to the arbitration, subject to subsequent judicial determination. The arbitrator's decision was not entitled, however, to any degree of deference by the trial court.[9] *See Haynes, supra,* 591

7. In this respect, arbitration is to be distinguished from litigation in a state court. Where a party actually litigates the jurisdiction of the court in the original forum, and loses, she may be estopped from later questioning in another forum the jurisdiction of the first court. *Williams v. North Carolina,* 325 U.S. 226, 230, 65 S.Ct. 1092, 1095, 89 L.Ed. 1577 (1945).

8. Wetherholt places some reliance on *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.,* 312 F.2d 299 (2d Cir.1963). In *Orion,* the court stated, "A decision whether parties other than those formally signatories to an arbitration clause may have their rights and obligations determined by an arbitrator *when that issue has not been submitted* to him is not within the province of the arbitrator himself but only of the court." *Id.* at 301 (emphasis added). Wetherholt apparently argues from that statement (which was *dictum*) and similar ones in other federal cases that the Grads could have "submitted" the question of alter-ego liability simply by participating in the proceedings.

    The Supreme Court recently rejected a similar argument in *First Options, Inc. v. Kaplan,* —— U.S. ——, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In *First Options,* the Court held that an agreement to "arbitrate arbitrability" may not be found in the absence of "clear and unmistakable evidence." *Id.* at ——, 115 S.Ct. at 1924 (internal quotation and citation omitted). Like the

Grads in the present case, the party opposing arbitration had submitted a memorandum objecting to the arbitrator's jurisdiction. The Court held that "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.,* a willingness to be effectively bound by the arbitrator's decision on that point." *Id.* at ——, 115 S.Ct. at 1925.

    *First Options* reinforces the logic of our decision concerning the consensual nature of arbitration. Moreover, the DCUAA expressly contemplates participation in an arbitration notwithstanding an objection to the arbitrator's jurisdiction, without waiver of the right to move to vacate an adverse award, as long as timely objection is made during the proceedings. In the present case, the Grads did make timely objection.

9. Wetherholt places great reliance on the Grads' supposed concession in the trial court that they were challenging the "power of the arbitrator to decide the issue of alter-ego and not in addition contesting the decision on alter-ego." In the context of this litigation, which seeks to vacate the arbitration award pursuant to the limited grounds for vacation of an award available under the statute, D.C.Code § 16–4311(a)(5), we understand that statement to mean that the Grads sought a court's determination on arbitrability as to them and that they were not attempting to

A.2d at 1290 & n. 6 (contrasting claim of fraudulent inducement of arbitration clause, which denies existence of an agreement to arbitrate and is therefore decided by the court, with attack on contract based on fraud, which is resolved by arbitrator).

Under the DCUAA, the arbitrator's authority derives from the consent of the parties. *See* D.C.Code § 16–4301 (declaring the enforceability of written agreements to arbitrate present or future disputes). To ensure that this principle of authority by consent is respected, the DCUAA allows an objecting party to seek judicial determination of the scope of consent either before, during or after an arbitration. *See* D.C.Code § 16–4302(b) (permitting motion to stay proceeding "commenced or threatened"); D.C.Code § 16–4311(a)(5) (permitting application to vacate award where there was no agreement to arbitrate). To require any degree of judicial deference to an arbitrator's decision regarding arbitrability where a proper objection to the arbitrator's authority has been lodged would vitiate the consent basis of statutory arbitration by permitting an arbitrator to clothe herself with actual authority, based on the agreement of the one party asserting the claim. Because under the DCUAA each party must hold a shoulder before the arbitrator

may don her cloak of authority, any judicial determination of arbitrability is necessarily *de novo*.[10] The decision of the arbitrator may, of course, influence the court's determination to the extent that its reasoning merits. In other words, it may well be persuasive, but it is not due legal deference.

We reverse and remand for further proceedings consistent with this opinion.

*So ordered.*

---

challenge the decision of the arbitrator assuming, *arguendo*, that the court decided that the arbitrator did have final authority over the question of arbitrability. Such challenges to the merits of arbitral awards are, of course, extremely difficult to establish. "Where ... a party has not sought to vacate an arbitrator's award on statutorily-recognized grounds pursuant to [the DCUAA], courts cannot set aside such awards for errors of law or fact made by the arbitrator." *Shaff v. Skahill*, 617 A.2d 960, 963 (D.C.1992) (citations omitted). In the present case, however, the Grads *have* sought to vacate the award on a statutorily-recognized ground; hence, the arbitrator's decision on the facts and law is not binding.

10. Wetherholt contends that the question of whether the Grads were proper parties to the arbitration was one for the arbitrator to decide. It looks to *Daiei, Inc. v. United States Shoe Corp.*, 755 F.Supp. 299 (D.Haw.1991), for support. Its reliance is misplaced. In *Daiei*, the arbitration clause was contained in a licensing agreement. *Id.* at 300. Shortly after the contract was signed, the licensee assigned the contract to a newly-created subsidiary, as contemplated by the agreement. *Id.* A dispute arose regarding the licen-

see's obligations under the agreement and the licensor demanded arbitration, ultimately naming as respondents both the original licensee and the specially-created subsidiary. *Id.* at 301. The original licensee brought an action in federal court objecting to the arbitration proceeding. *Id.* Under those circumstances, the court held that the licensee's "claim that it is not a proper party to the arbitration constitutes a procedural defense" for the arbitrator to decide. *Id.* at 303.

The present case may readily be distinguished. In *Daiei*, the objecting party had signed a contract containing an arbitration agreement with the claimant, and issues of liability under the contract were clearly subject to arbitration. The objecting party merely asserted that it was no longer liable under that contract. In the instant case, however, it is undisputed that the Grads never signed in their personal capacity any contract with Wetherholt. The Grads do not contend that they are *no longer* personally bound by the contract; they contend that they were *never* parties to the contract. That is not a mere procedural defense, but goes to the heart of whether the dispute between Wetherholt and the Grads is arbitrable—that is, the existence of a written agreement between them to submit their disputes to arbitration. *See* D.C.Code § 16–4301.