**DISTRICT OF COLUMBIA, Appellant,**

v.

**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 1403, Appellee.**

No. 09–CV–1148.

District of Columbia Court of Appeals.

Argued Oct. 20, 2010.
Decided April 28, 2011.

Donna M. Murasky, Deputy Solicitor General, with whom Peter J. Nickles, Attorney General for the District of Columbia at the time the brief was filed, and Todd S. Kim, Solicitor General, were on the brief, for appellant.

Betty Grdina, with whom Charles R. Both, Washington, DC, was on the brief, for appellee.

Before GLICKMAN and BLACKBURNE–RIGSBY, Associate Judges, and STEADMAN, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

This case arises from protracted labor negotiations between appellant the District of Columbia ("the District") and appellee the American Federation of Government Employees, Local 1403 ("AFGE"), the union that represents the line attorneys employed by the District's Office of the Attorney General ("OAG"). In September 2007, portions of the Collective Bargaining Agreement ("CBA") that affected the OAG line attorneys' rights re-

garding promotion and disciplinary issues expired.[1] AFGE represented the OAG line attorneys in the labor negotiations following the expiration of these non-compensation portions of the CBA governing promotions and disciplinary issues. When the negotiations between AFGE and the District proved unsuccessful, they agreed to submit to arbitration. The Arbitrator ruled in favor of AFGE's arguments on behalf of the line attorneys, but OAG did not accept the Arbitrator's decision as binding. Out of frustration caused by OAG's refusal to recognize the arbitrated agreement as final and binding, AFGE sought enforcement of the arbitration award on behalf of the line attorneys in Superior Court.

We are asked in this appeal to determine whether AFGE was precluded by the Comprehensive Merit Personnel Act ("CMPA") from seeking relief via the Uniform Arbitration Act ("UAA" or "Arbitration Act") to enforce *interest* arbitration awards in Superior Court.[2] While the specific issue of whether the Superior Court has jurisdiction to enforce a CMPA interest arbitration award is a matter of first impression, we recently held in a similar case that the Public Employee Relations Board ("PERB") possessed the sole jurisdiction to seek enforcement of *grievance* awards arbitrated under the CMPA. *Dis-trict of Columbia Metro. Police Dep't v. Fraternal Order of Police/Metro. Police Dep't Labor Comm.*, 997 A.2d 65, 78–79 (D.C.2010) ("*FOP* "). Interest awards refer to arbitration of disputes arising from the negotiation of *new* contract terms, while grievance awards refer to arbitration disputes arising from the interpretation or application of an *existing* agreement. *See* D.C.Code § 1–603.01(10) (2009 Supp.); *see also Council of Sch. Officers v. Vaughn,* 553 A.2d 1222, 1224 n. 6 (D.C.1989) (citation omitted). Upon review of the parties' arguments in this case, we see no reason why CMPA interest arbitration awards should be treated differently than CMPA grievance arbitration awards. Therefore, we extend the precedent recently established in *FOP* to include interest arbitration awards. We hold that the CMPA governs all collective bargaining disputes involving District municipal employees and, thus, preempts any attempt to use the Arbitration Act to confirm an arbitration award involving municipal employees.

In this case, the Superior Court granted, in part, appellee's Application to Confirm and Enforce the Arbitration Award ("Application"). In doing so, the court confirmed the interest arbitration award AFGE won from the District on October 2, 2008 and declared that the arbitrated CBA

---

1. In the District of Columbia, collective bargaining agreements are bifurcated into compensation and non-compensation components. The Comprehensive Merit Personnel Act established separate processes for the adoption of compensation and non-compensation components of collective bargaining agreements. This bifurcated scheme is evident throughout the statute. · *Compare* D.C.Code § 1–617.15 (2001) ("Collective bargaining agreements.") *with* D.C.Code § 1–617.17 (2009 Supp.) ("Collective bargaining concerning compensation.").

2. There is a question as to whether the Uniform Arbitration Act ("UAA") or the Revised Uniform Arbitration Act ("RUAA") applies in this case. AFGE contends that since this action commenced in December 2008, approximately seven months prior to the date that the RUAA superseded the UAA, this matter is governed by the UAA. The Superior Court seems to have accepted that argument and applied the UAA to this case. However, as the District argues, the RUAA states that "after, July 1, 2009, this chapter governs an agreement to arbitrate whenever made." D.C.Code § 16–4403(e) (2008 Supp.). In fact, as we explain *infra,* neither the UAA nor the RUAA governs this case.

was effective and binding on the parties. The District seeks reversal of the Superior Court's ruling and dismissal of AFGE's application on the grounds that: (1) the Superior Court lacked subject-matter jurisdiction to entertain appellee's application; and (2) the Superior Court lacked the authority to enter an order declaring the CBA effective and binding without such CBA having previously received Mayoral approval.

After reviewing the facts in this case and the statutory framework provided by the CMPA and the Arbitration Act, we reverse the Superior Court order confirming the arbitration award, vacate the court's order declaring the arbitrated CBA to be effective and binding, and remand with instructions to dismiss AFGE's application because the CMPA precludes relief under the Arbitration Act and Superior Court therefore lacks subject matter jurisdiction. Following our ruling in *FOP*, we hold that PERB has exclusive jurisdiction over labor disputes concerning municipal employees involved in CMPA based arbitration.

## I.  Factual Background

AFGE is the certified collective bargaining representative of the non-management ("line") attorneys employed by the OAG. In 2004, AFGE entered into a non-compensation CBA with the OAG that was set to expire on September 30, 2007. Prior to the CBA's expiration date, AFGE and OAG entered into negotiations for a successor agreement. The negotiations produced agreement between the parties on nearly all contested matters. However, due to disagreement regarding three articles concerning working conditions, on August 20, 2007, AFGE sent a letter informing PERB that the parties could not agree to a new CBA. Specifically, the three articles in dispute concerned: (1) whether there would be binding arbitration for grievances over serious discipline; (2) whether the union should be able to grieve and arbitrate unsatisfactory performance ratings; and (3) "whether attorneys who are qualified and ranked for promotion but do not get promoted in a particular year should be given priority for promotions" in the following year. In other words, the line attorneys, through their AFGE union representatives, sought greater input regarding their grounds for promotion, suspension, and termination. The OAG maintained that these issues impinged on rights that, under the CMPA, management was allowed to reserve to itself. *See* D.C.Code § 1–617.08 (2005 Supp.) (detailing management rights and matters subject to collective bargaining). With the parties unable to reach agreement on these three articles, AFGE declared an impasse and invoked PERB's impasse resolution procedures. *See* D.C.Code § 1–605.02 (2001).

Subsequent mediation proved unsuccessful and, on January 10, 2008, PERB ordered the parties to interest arbitration pursuant to D.C.Code § 1–605.02(4). On January 23, 2008, PERB appointed Dr. Andree McKissick to serve as the Chairperson of the Impartial Board of Arbitrators. Arbitrator McKissick held a hearing on May 28, 2008, and on September 27, 2008, she issued an Opinion and entered an interest arbitration award in favor of AFGE, holding that all three of the union's proposals regarding promotions and disciplinary measures for the line attorneys were "fairer, more reasonable and consistent with existing laws, rules and regulations."

On October 24, 2008, AFGE sent OAG a letter asking it to comply with and sign the arbitration award. In response, then-Acting Attorney General Peter J. Nickles sent AFGE a letter dated October 29, 2008, in which Nickles maintained that Arbitrator McKissick's award was contrary to law.

Nickles disagreed with AFGE's contention that the arbitrator's award precluded further review by the Mayor. According to Nickles, "Under the D.C.Code, the Mayor has the authority to decide that the agreement is contrary to law, return it to the parties for renegotiation or delete the offensive provisions from the CBA." Nickles asked the Office of Labor Relations and Collective Bargaining ("OLRCB") to complete a legal sufficiency review of the CBA, and requested that AFGE send him any legal authority for their position that the Mayor need not review and could not reject the CBA containing the arbitration award. Nickles closed his letter by telling AFGE that:

> After I review your comments on the Mayor's authority under D.C.Code § 1–617.15 and any comments on OLRCB's memorandum, I will decide what OAG's next steps should be in connection with this matter. I too would like to have a signed successor agreement in place as soon as possible so we can return to the business of representing our clients.

Despite Nickles' stated wish to "have a signed successor agreement in place as soon as possible," the parties' impasse continued and approximately one month later, on December 3, 2008, AFGE filed an Application to Confirm and Enforce the Arbitration Award in Superior Court pursuant to the UAA. AFGE filed its Application against Nickles, in his capacity as Attorney General, OAG, and the District of Columbia.

In filing the Application, AFGE sought to compel OAG to sign, and accept as binding, Arbitrator McKissick's order. Specifically, AFGE's Superior Court application sought: (1) confirmation of McKissick's arbitration award; (2) a judgment enforcing the arbitration, entered in conformity with the order confirming the arbitration award; (3) an order compelling the

District to execute a final CBA containing the terms awarded by Arbitrator McKissick, as well as the earlier agreed upon articles; (4) an order requiring the District to pay appellee's reasonable attorney's fees and costs; and (5) such other relief as the court deemed just and proper. The District successfully moved to have Nickles and OAG dismissed from the lawsuit on the grounds that the OAG was *non sui juris*, and that Nickles' alleged conduct was performed within the scope of his official duties on behalf of the District. The District also moved to dismiss the Application for lack of jurisdiction, because the CBA lacked finality as it had not yet been submitted for Mayoral review. On July 21, 2009, the Superior Court issued its order in favor of the union, enforcing the arbitrator's award and declaring the negotiated CBA to be final, binding, and in effect. The court concluded that:

> Since a final and binding agreement existed prior to [appellee's] filing the instant action on December 3, 2008, well within the required 90–day statutory period for filing an action to confirm Arbitrator McKissick's Award which AFGE received on October 2, 2008, the Court has jurisdiction over this case and Arbitrator McKissick's Opinion and Award is confirmed.

Subsequent to the court's order, the District filed a Motion to Amend Judgment or For Clarification. The District asserted that by referring to the CBA as "effective and binding," the court's order suggested "declaratory relief that was not sought by [AFGE], exceeds the [c]ourt's jurisdiction, and is contrary to D.C.Code § 1–617.15(a)." The court denied the District's motion, determining that, "The Court made it very clear that 'on the 46th day after Defendant Nickles' October 29, 2008 letter, December 13, 2008, the negotiated agreement was effective and 'binding on the parties' pursuant to D.C.Code § 1–

617.15(a).' ... Therefore, the parties are required to comply with the Court's July 21, 2009 order."

Following the denial of its motion, the District sought a partial stay pending appeal, which the Superior Court denied. The District then sought a partial stay in this court. We granted the stay "to the extent that the trial court's order found that the Mayoral review period of the Collective Bargaining Agreement [ ] had lapsed and that the new CBA was in effect since December 13, 2008 . . . ." We further ordered that the "Mayoral review period afforded by D.C.Code § 1–617.15(a) (2006) shall run from the date of this Court's order [November 24, 2009]." On January 7, 2010, forty-four days after this court's order, then-Mayor Adrian Fenty issued a memorandum to both AFGE and the OAG. Pursuant to § 1–617.15(a), Mayor Fenty disapproved the proposed non-compensation CBA. The Mayor rejected one of the provisions of the arbitration award that had been contested by AFGE and the District and, in addition, the Mayor rejected three other provisions upon which AFGE and the government had agreed. Mayor Fenty determined that these provisions were "contrary to law" and requested that the parties "resubmit a proposed agreement that conforms to the law." As of the time of oral argument before this court, there was no successor agreement for the contested non-compensation provisions of the 2004 CBA.

## II. Statutory Framework

This case requires us to interpret the rather complex statutory framework governing the arbitration of labor disputes in the District of Columbia. The two statutes in contention are the Comprehensive Merit Personnel Act and the Arbitration Act.[3] The parties interpret key provisions of each statute differently. Therefore, it may be helpful to briefly introduce and explain the statutes at issue here.

### A. The CMPA

Of particular concern in the present case is the CMPA § 1–605.02, which describes PERB's powers. Specifically, § 1–605.02(6) grants to PERB the power to "[c]onsider appeals from arbitration awards pursuant to a grievance procedure;" and that "the provisions of this paragraph shall be the exclusive method for reviewing the decision of an arbitrator concerning a matter properly subject to the jurisdiction of the Board, notwithstanding provisions of [the Arbitration Act]." The District focuses on the language that "this paragraph shall be the *exclusive method* for reviewing the decisions of an arbitrator" and interprets § 1–605.02(6) as precluding confirmation of CMPA awards under the Arbitration Act. (Emphasis added). The District reasons that while "[s]uch awards would have been presumptively encompassed by the UAA because they would be arbitration awards pursuant to a written CBA" this provision signifies "a legislative decision not to intermingle CMPA and UAA matters" by taking "these awards out of the UAA." AFGE instead focuses on the earlier language in the same provision, which begins, "Consider appeals from arbitration awards pursuant to a *grievance* procedure . . . ." (Emphasis added). AFGE maintains that this earlier language limits the remainder of the provision to apply to grievance awards only. Therefore, AFGE contends that "the CMPA does not expressly exclude *interest* arbitration awards from review under the D.C. Uniform Arbitration Act," while it does limit the review of *grievance* arbitration awards to PERB. AFGE argues that resort to the UAA is permissible

---

3. For the sake of clarity, we refer to both the   UAA and the RUAA as "the Arbitration Act."

because this case involves an interest arbitration award, and not a grievance award.

The stated purpose of the District of Columbia's Comprehensive Merit Personnel Act is "to assure that the District of Columbia shall have a modern flexible system of public personnel administration...." D.C.Code § 1–601.02(a) (2009 Supp.). Specifically, the D.C. Council intended for the CMPA to, among other things, "[i]nsure the efficient administration" of the personnel system, "[e]stablish impartial and comprehensive administrative or negotiated procedures for resolving employee grievances," and "[p]rovide for a positive policy of labor-management relations including collective bargaining between the District of Columbia government and its employees[.]" D.C.Code § 1–601.02. In order to "provid[e] for a positive policy of labor-management relations," the CMPA created the Public Employee Relations Board. PERB is composed of "persons who through their experience have demonstrated an expert knowledge of the field of labor relations." D.C.Code § 1–605.01 (2008 Supp.). The CMPA entrusts PERB with powers including the following: (1) the power to decide "whether unfair labor practices have been committed and issue an appropriate remedial order;" (2) the power to resolve "bargaining impasses through fact-finding, final and binding arbitration, or other methods agreed upon by the parties as approved by the Board and to remand disputes if it believes further negotiations are desirable;" (3) the power to determine "in disputed cases ... whether a matter is within the scope of collective bargaining;" (4) the power to consider "appeals from arbitration awards pursu-

ant to a grievance procedure;" and (5) the power to seek "appropriate judicial process to enforce its orders and otherwise carry out its authority under this chapter." D.C.Code § 1–605.02.

The CMPA also dictates the specific procedure for the approval of CBAs negotiated between labor organizations and the government:

An agreement with a labor organization is subject to the approval of the Mayor or his or her designee.... An agreement shall be approved within 45 days from the date of its execution by the parties, if it conforms to applicable law. If disapproved because certain provisions are asserted to be contrary to law, the agreement shall either be returned to the parties for renegotiation of the offensive provisions or such provisions shall be deleted from the agreement. An agreement which has not been approved or disapproved within the prescribed period of 45 days shall go into effect on the 46th day and shall be binding on the parties.

D.C.Code § 1–617.15(a). After the Mayor has approved the CBA, the Mayor is to submit the CBA to the D.C. Council for its information.[4] D.C.Code § 1–617.15(b). CBAs that specifically concern compensation are subject to the review of both the D.C. Council and the Mayor. *See* D.C.Code § 1–617.17.

## B. The Arbitration Act

At the heart of the parties' disagreement about whether or not the Arbitration Act applies in the present case are differing arguments about the very nature of the Arbitration Act. The District contends

---

4. Unlike compensation CBAs, which must pass mayoral and Council review before approval, non-compensation CBAs do not require Council review before they may be approved by the Mayor. *Compare* D.C.Code § 1–617.15, *with* D.C.Code § 1–617.17(i). Instead, D.C. law requires the Mayor to submit approved non-compensation CBAs to the Council for information purposes only. *See* D.C.Code § 1–617.15(b).

that the statutory language of the Arbitration Act limits it solely to "written agreement[s] to submit any existing controversy to arbitration...." D.C.Code § 16–4301 (2001) (repealed July 1, 2009); *see* D.C.Code § 16–4403(e) (2008 Supp.) ("On or after July 1, 2009, this chapter governs an agreement to arbitrate whenever made."). Therefore, the District argues, the Arbitration Act must not apply to CMPA awards as CMPA arbitration is "not the result of an agreement but the result of a statutory imperative—the CMPA." AFGE responds by noting that, unlike the Federal Arbitration Act, the District of Columbia's Arbitration Act explicitly "applies to arbitration agreements between employers and employees or between their respective representatives." D.C.Code § 16–4301. AFGE interprets the Arbitration Act's stated application to agreements to arbitrate as solely "intended to establish that the arbitrator's authority derives from the consent of the parties.... Such consent necessarily follows from the ongoing relationship between the employer (District of Columbia) and the employees' certified bargaining representative (AFGE Local 1403)." For support, AFGE bases its interpretation of § 16–4301 on our opinion in *Grad v. Wetherholt Galleries*, 660 A.2d 903, 908 (D.C.1995). In *Grad*, we reversed the trial court's determination that an arbitrator had exclusive authority to decide who was party to the agreement containing the arbitration clause. 660 A.2d at 905. While we did, in dicta, state that, "[u]nder the DCUAA, the arbitrator's authority derives from the consent of the parties," AFGE's reliance on *Grad* here is misplaced. *Id.* at 908. *Grad* did not involve CMPA arbitration, but rather arose out of a written arbitration agreement. *See id.* at 904–05. That dis-

tinction is not merely factual. Later in *Grad*, we wrote that the very existence of the written agreement to arbitrate "goes to the heart of whether the dispute between [the parties] is arbitrable" under the UAA. *Id.* at 908 n. 10 As the District notes, there is no such written agreement to arbitrate in the present case. Therefore, as we will explain, the CMPA forecloses applicability of the Arbitration Act to collective bargaining agreements between the District and its municipal employees.

The UAA was in effect in the District of Columbia from 1977 until 2008, when it was replaced by the RUAA.[5] The UAA stated that, "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." D.C.Code § 16–4301. The UAA also applied to "arbitration agreements between employers and employees or between their respective representatives." *Id.* Under the UAA, parties in arbitration disputes could file motions in Superior Court in order to have an arbitration award confirmed, modified, corrected, or vacated. *See* D.C.Code §§ 16–4315, –4313, –4312. The UAA stated that once the court granted an order confirming, modifying or correcting an award, "judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree." D.C.Code § 16–4313. Unlike the CMPA, which specifically limits its application to labor relations between the District government and its employees, the

5. The RUAA currently governs all agreements to arbitrate in the District of Columbia.

D.C.Code § 16–4403(e); *see* note 2, *supra.*

Arbitration Act does not expressly delineate which types of labor relations are governed by the statute.

### III. Legal Analysis

#### A. Standard of Review

■ We review *de novo* whether or not a labor union has a right to invoke the Arbitration Act, since it is a purely legal question that calls for an interpretation of the CMPA and an application of court-created exhaustion requirements. *FOP, supra,* 997 A.2d at 77; *Arthur v. District of Columbia,* 857 A.2d 473, 490 (D.C.2004).

#### B. Statutory Preclusion and Subject Matter Jurisdiction

■ The District contends that the CMPA's remedial statutory scheme precludes the Superior Court's subject-matter jurisdiction to enforce an arbitration award under the Arbitration Act. Before we deal with the merits of the District's argument, it is necessary to dispatch AFGE's argument that the District waived its jurisdictional objection. AFGE argues that we should not entertain the District's objection to the Superior Court's lack of jurisdiction, because the District never presented to the Superior Court the specific argument that the UAA "encompassed only arbitration awards made pursuant to a written agreement or contract," and therefore waived its objection to the court's jurisdiction. AFGE's argument evinces a flawed understanding of the law. We have recognized that parties "cannot waive subject matter jurisdiction by their conduct or confer it . . . and the absence of jurisdiction can be raised at any time." *Chase v. Pub. Defender Serv.,* 956 A.2d 67, 75 (D.C.2008) (citing *Customers Parking, Inc. v. District of Columbia,* 562 A.2d 651, 654 (D.C.1989)). Moreover, appellee's argument mischaracterizes the facts in this case. The District did indeed argue that the Superior Court lacked jurisdiction over this matter. While the District may have based its jurisdictional objection on an exhaustion argument in Superior Court, that objection is sufficient to stave off any claim of waiver of the jurisdiction argument in this court.

We now move to the merits of the District's claim. The trial court's order confirming the interest arbitration award concluded that jurisdiction existed because there was "a final and binding agreement" in existence within the required ninety-day statutory period for filing an action to confirm an arbitration award under the UAA. Though the Superior Court did not specifically refer to a section of the D.C.Code, its reliance on a ninety day statutory period seems to refer to § 16–4312 of the UAA, which requires applications to be made "within ninety days after delivery of a copy of the award to the applicant. . . ." The Superior Court's apparent reliance on a UAA provision assumes that the UAA conveys jurisdiction to Superior Court to confirm CMPA Arbitration awards. However, neither § 16–4312, nor any other portion of the UAA, specifically includes or even references awards made pursuant to the CMPA. On the other hand, the CMPA does reference the UAA. In § 1–605.02(6), the CMPA discusses PERB's power to consider appeals from arbitration awards pursuant to a grievance procedure and states that "the provisions of this paragraph shall be the *exclusive method* for reviewing the decision of an arbitrator concerning a matter properly subject to the jurisdiction of the Board, *notwithstanding provisions of §§ 16–4401 et seq* [.]" (Emphasis added). D.C.Code §§ 16–4401 *et seq.* is where the RUAA is codified. Here, the D.C.Code explicitly states that the UAA is not to be used to review CMPA grievance awards.

We relied on that provision detailing PERB's exclusive jurisdiction in § 1–

605.02(6), and extended it further, in *FOP*. In that case, this court reversed the Superior Court's enforcement of a grievance award to the local police union arbitrated under the CMPA. *FOP, supra,* 997 A.2d at 68. In *FOP*, we held that the CMPA precludes parties from obtaining enforcement of CMPA arbitration awards under the Arbitration Act. *Id.* at 78–79. We further held that the CMPA provides the exclusive remedy for seeking enforcement of CMPA grievance arbitration awards, and that the Superior Court lacks the jurisdiction to enforce such awards under the Arbitration Act. *Id.* at 77. Specifically, *FOP* interpreted the CMPA as stating the D.C. Council's intent that PERB and "not the courts . . . be the forum for proceedings after an award has been entered." *Id.* at 79. We reasoned that, "Because the CMPA is the source of the award, it is natural for the CMPA to provide the avenue for its enforcement; a contrary reading would revive the disjointed, decentralized personnel system that the CMPA was designed to replace." *Id.* at 80 (quotation marks omitted). By so holding, we rejected the union's argument that while District of Columbia law mandated that the CMPA exclusively govern entry and appeals of grievance awards, it allowed for enforcement to be pursued via both the CMPA and the Arbitration Act. *Id.* We noted that even if the CMPA did not preclude the union's attempt to confirm the award under the Arbitration Act, the confirmation of their award still required reversal due to the union's failure to exhaust its administrative remedies prior to coming to court. *Id.* The specific language of the CMPA grants the parties the ability to file an unfair labor practice complaint with PERB, and to petition PERB to seek enforcement of their award in the courts. *Id.* (citing D.C.Code §§ 1–605.02(3), (16)). We held that, notwithstanding our holding that the CMPA precludes resort to the Arbitration Act, the union's "failure to avail itself of either remedy is an independent reason that its action fails." *Id.*

The facts in the present case are quite similar to those in *FOP*. In the present case, AFGE sought enforcement of the CMPA arbitration award in Superior Court under the Arbitration Act. Moreover, AFGE did not fully avail itself of the specific remedies provided by the CMPA.[6] In the present case, the District makes the same two-tiered argument that the *FOP* appellant made: (1) the Superior Court lacks subject-matter jurisdiction to enforce the award because the CMPA's remedial scheme precludes resort to Superior Court under the Arbitration Act; and (2) even if Superior Court generally has jurisdiction of these matters, the union did not exhaust the necessary administrative remedies before turning to the courts. The similarities in the facts and arguments present in this case and in *FOP* are clear. There is, however, one important difference in the present case. This case involves an interest award, governed generally by §§ 1–605.02(4) and (16), and –617.02(d) of the CMPA, whereas *FOP* involved a grievance award explicitly governed by § 1–605.02(6) of the CMPA. The similarities between this case and *FOP* lead us to follow our recent precedent and further extend the *FOP* ruling to interest arbitration awards.

---

**6.** However, unlike the appellee union in *FOP*, in this case AFGE did file an unfair labor practice complaint with PERB after it filed its Application in Superior Court. PERB has not yet ruled on appellee's complaint. It may be that PERB has taken no action on this apparently purely protective filing in light of the prior court litigation instigated by the union. We encourage PERB to resolve the dispute between AFGE and the District forthwith, in light of our ruling today that the Superior Court lacks the jurisdiction to do so.

At oral argument,[7] AFGE argued against extending *FOP* to the present case on the grounds that *FOP* is distinguishable because the present case involves an interest arbitration award, and not a grievance arbitration award, which was at issue in *FOP*. Instead, AFGE argues that *Vaughn, supra,* 553 A.2d 1222, and not *FOP*, is the more persuasive case on this issue. This case does not fit squarely within either precedent because it involves an interest award pertaining to a non-compensation CBA. *Vaughn,* in contrast, involved an interest award pertaining to a *compensation* CBA, while *FOP* involved a *grievance* award pertaining to a non-compensation CBA. Because we conclude that the distinction between interest and grievance awards is not dispositive, we find our recent analysis of arbitration awards pertaining to non-compensation CBAs in *FOP* to control, and we apply that analysis in this case.

In arguing that the distinction between a grievance award and an interest award is dispositive, AFGE relied upon our prior ruling in *Vaughn,* where we interpreted the CMPA to empower PERB to review only "appeals from arbitration awards rendered pursuant to a grievance procedure . . . ." 553 A.2d at 1225. However, appellee's reliance on *Vaughn* is misplaced. In *Vaughn,* the union was the appellant and was dissatisfied with the interest award it had won in CMPA arbitration. *Id.* at 1224. The union therefore asked PERB to review the award, which we interpreted the CMPA to allow only in the case of grievance awards. *Id.* at 1224–25. Here, however, appellee would not be seeking PERB *review* of its interest award, rather it would be petitioning PERB to *enforce* the interest arbitration award that it won. That distinction is crucial because if, as AFGE contends, *Vaughn* foreclosed all resort to PERB in the case of interest arbitration awards, then our ruling would deprive PERB of much, if not all, of its statutory power to facilitate and enforce the resolution of interest disputes within the realm of collective bargaining. Such a ruling is inherently contradictory to multiple CMPA statutory provisions. *See, e.g.,* D.C.Code §§ 1–617.02(d), –617.13(b). Therefore, *Vaughn* does not prevent us from extending our holding in *FOP* to interest arbitration awards.

■ *FOP* instead persuades us that the CMPA's statutory scheme precludes resort to the Arbitration Act. In *FOP*, we held that "the text of the CMPA, as informed by the purposes it seeks to achieve and the history of which that Act was borne, shows that the CMPA precludes [the union] from obtaining relief under the Arbitration Act." 997 A.2d at 78–79. While we acknowledged that "there is no provision on point so stating," we instead looked to "textual clues" that supported such a conclusion. *Id.* at 79. Only one of those textual clues, § 1–605.02(6), can be read to draw a distinction between grievance and interest arbitration awards. The other textual clues make no such distinction. Specifically, we relied on the language of §§ 1–605.02(3) and (16). Section 1–605.02(16) explicitly grants PERB the power to "[s]eek appropriate judicial process to *enforce* its orders and otherwise carry out its authority under this chapter." (Emphasis added). Moreover, unlike the CMPA subsections at issue in *Vaughn,* § 1–605.02(16) does not limit its reach to grievance awards, but applies to all arbitration conducted under the CMPA.

Section 1–605.02 (3) simply grants PERB the power to "[d]ecide whether unfair labor practices have been committed

<hr/>

7. We decided *FOP* after briefs in this case had already been submitted.

and issue an appropriate remedial order." However, we interpreted that provision as showing that the CMPA provides a comprehensive scheme, because the provision establishes PERB's power of enforcement under the statute. *See FOP, supra,* 997 A.2d at 79–80. Apart from the textual clues, we based our analysis in *FOP* on policy grounds. We determined that preclusion better serves the purposes of the CMPA to provide for a centralized and organized personnel system. *Id.* at 80. Nowhere in our analysis of §§ 1–605.02(3) and (16), nor in our discussion of policy concerns, did we make any distinction between grievance and interest awards for purposes of enforcement. We are thus satisfied that our holding in *FOP* should not be limited to cases involving grievance arbitration awards. Instead, we conclude that our holding in *FOP* is applicable to interest arbitration awards, and the Superior Court lacks the subject-matter jurisdiction to grant relief for a CMPA interest arbitration award under the Arbitration Act.[8]

## IV. Conclusion

Because we discern no dispositive difference between interest arbitration awards and grievance arbitration awards, we extend our recently established precedent in *FOP* to all CMPA arbitration awards, and we hold that the CMPA provides the exclusive remedies for conflict arising from arbitration awards granted under that statute. As such, we reverse and vacate the trial court's order enforcing AFGE's arbitration award pursuant to the UAA, for want of subject-matter jurisdiction. The Arbitration Act does not convey jurisdiction to Superior Court over these matters. Therefore, we remand with instruction that the Superior Court dismiss AFGE's Application to Confirm and Enforce the Arbitration Award.

*So ordered.*

---

8. Rather than adopt the Superior Court's reasoning, AFGE asks us to affirm the order on different grounds by declaring the CBA binding and in effect, because it was well within the Superior Court's equitable power to do so, due to the "uniquely obstructive behavior contrived" by the District to deprive the court of jurisdiction. While AFGE's frustration is understandable regarding the length of time that has passed since the expiration of the non-compensation CBA, we are not persuaded by AFGE's legal argument. AFGE's contention that it had no further recourse to enforce the arbitration award apart from seeking judicial review is undermined by our court's recent decision in *FOP*, where we noted two possible avenues for recourse under the CMPA: petitioning the Board to enforce its order affirming the award, and filing an unfair labor practice complaint. 997 A.2d at 80. Moreover, the Superior Court may not use its inherent equity power "where a rule or other authority defines the boundaries of a particular procedural remedy...." *Siddiq v. Ostheimer,* 718 A.2d 145, 148 (D.C.1998). The use of the court's inherent equity power was not—and is not—appropriate in this case.